UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JAMES B BEL ET AL.** | **CASE NO. 2:20-CV-01583** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SCOTTSDALE INSURANCE CO.** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

## MEMORANDUM RULING

Before the court are cross-motions for summary judgment [docs. 14, 15], filed at the court's direction by the parties to this action on their dispute over coverage for damage to plaintiffs' hunting lodge under the insurance policy issued by defendant. The matter came before the court for oral argument on May 25, 2021, and the undersigned now issues this ruling.

### I.
### BACKGROUND

This lawsuit is one of hundreds of first-party insurance actions filed here following the damage inflicted on Southwest Louisiana in the 2020 hurricane season. Plaintiffs James B. Bel and Jim Bel's Bayou Properties, LLC ("the Bels") own and operate a duck hunting lodge in Hackberry, Louisiana. Doc. 1. At the time Hurricane Laura made landfall, on August 27, 2020, the Bels had in place a commercial insurance policy with defendant Scottsdale Insurance Company ("Scottsdale"), effective from January 4, 2020, to January 4, 2021 ("the 2020 policy"). *See* doc. 15, att. 4. The 2020 policy provides coverage for three properties, according to the schedule of locations: the duck hunting lodge; a plot of

vacant land in Oberlin, Louisiana; and an animal shelter in Lake Charles, Louisiana. *Id.* at 22. The same page identifies all three locations as covered under the policy's liability insurance. *Id.* Only the animal shelter location (identified as "Premises 3") is described within the commercial property coverage sections. *See id.* at 22, 102–22. The declarations page, however, lists the Bels as the named insured and describes the business as a "hunting club." *Id.* at 14. It then goes on to list premiums for both general liability and property coverage. *Id.* The declarations page only records a building at the animal shelter location, though Scottsdale does not dispute that there is also a building on the duck hunting premises. *See id.* In contrast, the 2019 policy documents likewise identified only "Premises 3" as covered under the commercial property insurance but described that business as a "Duck Hunting Lodge." Doc. 14, att. 1, p. 220. Both policies charged the same premiums for the commercial property coverage. The two policies were drafted following a Change Endorsement in the 2018–19 policy, effective from January 4, 2019, onward, which amended commercial property coverage from Premises 1 to Premises 3 and changed the description of Premises 3 to "Animal Shelter." Doc. 15, att. 8, pp. 112–15. This endorsement was inserted based on a request from the Bels' insurance agent in January 2018. Doc. 15, att. 9.

After the hunting lodge sustained damage in Hurricane Laura, the Bels filed suit against Scottsdale for breach of insurance contract and invoked this court's diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1. A coverage dispute arose between the parties over whether the lodge was covered under the 2020 policy's commercial property insurance, and at the court's instruction they filed the instant cross-motions for summary

judgment. Scottsdale maintains that, under the plain terms of the policy, there is no coverage and so the Bels' claims must be dismissed. Doc. 15. The Bels, meanwhile, assert that the terms of the policy are ambiguous, especially in light of the 2019 policy documents, and that this ambiguity must be construed in favor of coverage. Doc. 14.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v.*

3

*Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046). When the terms are ambiguous, however, that ambiguity must be construed against the insurer and in favor of coverage. *Id.* at 589–90. The contract must also be interpreted as a whole, with each provision reviewed in light of the others. *Calcasieu Parish Sch. Bd. v. Miller*, 92 So.3d 1200, 1202 (La. Ct. App. 3d Cir. 2012).

Scottsdale asserts that there is no coverage because the "plain terms of the most relevant provisions" establish that commercial property insurance was only purchased for the animal shelter under the 2020 policy. Doc. 15, att. 2, p. 6. They also emphasize that plaintiffs never sought to revise or amend the policy, in order to clear up any discrepancies, until after the hurricane had inflicted its damage. But the declarations page remains part of

4

the policy. *See, e.g.*, *Mike Hooks, Inc. v. JACO Svcs., Inc.*, 674 So.2d 1125, 1127–28 (La. Ct. App. 3d Cir. 1996) (rejecting as an exclusion as ambiguous when it conflicted with coverage described on declarations page). The declarations page of the 2020 policy creates just such an ambiguity, as it describes the covered business as a hunting club. This ambiguity is bolstered by the 2019 policy's description of Premises 3 as a duck hunting lodge within the commercial property supplemental declarations. These ambiguities must be read in favor of property insurance coverage for the hunting lodge. The court need not inquire into other evidence of the parties' intent, such as the requests behind the change endorsement, because these requests failed to result in policy terms that unambiguously exclude the coverage at issue.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 14] filed by the Bels will be **GRANTED** and the Motion for Summary Judgment [doc. 15] filed by Scottsdale will be **DENIED**. The court finds that the terms of the insurance contract must be construed to provide coverage for the Bels' hunting lodge; accordingly, the Bels' claims may proceed.

**THUS DONE AND SIGNED** in Chambers on this 25th day of May, 2021.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**